

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

ATTORNEY GENERAL

Hon. Walker Carson
County Attorney
Hudspeth County
Sierra Blanca, Texas

Dear Sir:

Opinion No. O-2778
Re: Can the commissioners' court
legally purchase road machinery
for the maintenance of lateral
roads out of the lateral road main-
tenance fund mentioned?

Your recent telegram requesting an opinion of this department upon the above stated question has been received. We quote from your telegram as follows:

"Please advise me by wire collect whether or not in your opinion the county commissioners' court can legally purchase road machinery for the maintenance of lateral roads out of the lateral road maintenance fund created by State money paid this year to county for lateral road construction and maintenance. This is a new fund under a new statute and the only authority I find is Article 6674q-7 'H' and Article 6674q-13. The commissioners' court has heretofore elected to use this money for construction and maintenance of lateral roads as required by Article 6674q-7 'H'."

Paragraph H of Article 6674q-7 reads, in part, as follows:

"The monies allocated to each county from the Lateral Road Account shall be used by said county first for paying the principal, interest and sinking fund requirements maturing during the fiscal year for which such money was allocated to such county on bonds, warrants and other legal obligations issued prior to January 2, 1939, the proceeds of which were actually expended in acquiring rights of way for State designated highways, it being the intention of the Legislature to designate and set apart sufficient money to pay off and discharge said outstanding obligations incurred for right of way acquisition. Funds remaining in the Lateral Road Fund of any county

after the payment of said right of way obligations may be used by the county, under the direction of the Commissioners Court, for any one or all of the following purposes: (a) for the acquisition of rights of way for county lateral roads and for the payment of legal obligations incurred therefor prior to January 2, 1939, (b) for the construction or improvement of county lateral roads, (c) for paying the principal, interest and sinking fund requirements of any bonds or warrants which were legally issued by such county or Road District prior to January 2, 1939, the proceeds of which were actually expended in the construction or improvement of lateral county roads, (d) for the purpose of supplementing funds appropriated by the United States Government for Works Progress Administration highway construction, and such other grants of Federal funds, as may be made available to the counties of this State for county lateral road construction, and (e) for the purpose of cooperating with the State Highway Department and the Federal Government in the construction of farm-to-market roads.

"After such allocation has been made to the several counties in the State, the Board shall in writing notify the Chairman of the Commissioners Court of each county of the amount which has been credited to that county. After receiving said notice, the Commissioners Court shall, within sixty days, notify the Board of the manner in which it has exercised its option as to the one or more specified uses of said money permitted under this Act.

"In the event the Commissioners Court of a county shall have elected to use all or any part of the money thus allocated to said county for the purpose of paying principal and interest or sinking fund requirements of its indebtedness for lateral roads, such money shall be applied pro rata to the payment of the debt service requirements of all issues of lateral road indebtedness of the county and all included defined road districts, in the proportion that the debt service requirements of each issue bears to the aggregate debt service requirements of all issues for that year. When any issue of obligations which will receive

aid under this section is already listed with
the Board of County and District Road Indebted-
ness, the Board shall credit the amount appli-
cable to said issue to the account of said issue
in the State Treasury.  As to all other issues
of obligations, which will receive aid under this
subsection (h), theCommissioners Courts of the
specific counties affected shall have the right
if so desired to utilize the facilities of the
State Board of County and District Road Indebted-
ness in paying the amounts of principal and in-
terest on said issues substantially in the manner
that payments are effected as to such eligible
obligations.

"In the event the Commissioners Court of a
county elects to use the money allocated to it
from the Lateral Road Account for the construc-
tion of lateral roads, it shall notify, in writ-
ing, the said Board of its election to make such
use of said money.  Whereupon, said Board shall
remit said money, or the part thereof to be util-
ized for such purpose, to the County Treasurer
of such county, said money to be deposited by the
County Treasurer in accordance with the law, and
the same shall be utilized by the county, acting
through the Commissioners Court, for the con-
struction of lateral roads.  Each county may call
upon the State Highway Commission to furnish ade-
quate technical and engineering supervision in
making surveys, preparing plans and specifica-
tions, preparing project proposals and supervis-
ing actual construction; the actual cost of such
aid in supervision shall be paid by the county as
a charge against its project.

"In order that maximum benefits may be ob-
tained in the expenditure of the State fund made
available to the counties under this Act for the
construction of county lateral roads, and so that
the counties may have the benefit of widespread
competition among contractors in bidding on such
projects, such counties may, in their discretion
authorize the State Highway Commission to receive
bids in Austin on all such construction in the
same manner as is now provided by law for the
award of contracts on State Highways.

"When any road which shall have been constructed by any county wholly from the County Lateral Road Account shall be designated by the State Highway Commission as a part of the system of designated State Highways, the designation of such road by the State Highway Commission shall constitute a full and complete discharge of any and all obligations of the State, moral, legal or implied, for the payment of such highway.

"In the event the Commissioners Court elects to cooperate with the Highway Department in the building of, or in the construction of, farm-to-market roads, it shall by proper resolution entered upon its minutes, authorize the State Treasurer to pay such funds to be so used over to the State Highway Department for use on certain designated projects. Regardless of how the funds allocated to the counties from the Lateral Road Account are used, the County Judge of each county shall file with the Board on or before October 1st, of each year, a verified report showing the manner in which the said funds have been expended, the nature and location of the roads constructed, and such other information as the Board may from time to time require."

Article 6741, Vernon's Annotated Civil Statutes, provides:

"The commissioners court may make and enforce all reasonable and necessary rules and orders for the working and repairing of public roads, and to utilize the labor to be used and money expended thereon, not in conflict with the laws of this State. Said court may purchase or hire all necessary road machinery, tools or teams, and hire such labor as may be needed in addition to the labor required of citizens to build or repair the roads."

We quote from Texas Jurisprudence, Vol. 21, p. 630, as follows:

"Subject to any local law, commissioners' courts are invested with the power and charged

with the duty of creating and maintaining
adequate roads. They are commanded to lay out
and establish roads when necessary. These
words mean 'make, create or found permanently'
-- that is to say, they are empowered to do all
such acts as may be necessary to construct
permanent roads. They are further directed to
'exercise general control over all roads, high-
ways, ferries and bridges in their counties.'
Accordingly, where a statute applicable to
highways merely empowers commissioners' courts
to exercise their powers in a particular way,
it will be construed as being subordinate to
the general power of control, and not manda-
tory. Similarly, the doctrine of implied pow-
ers enables commissioners' courts to do all
that is necessarily incidental to their declared
powers of road improvement and regulation. The
limits of their powers, however, are reached
when they exceed what may fairly be implied.

"Just as in matters involving the establish-
ment of a highway, the administrative powers of
commissioners' courts are exercisable according
to their discretion with which the courts re-
frain from interfering except upon a clear show-
ing of abuse. ***"

Lasater v. Lopez, 202 S.W. 1039, affirmed 217 S.W.
373.

It will be noted that paragraph H of Article 6674q-7,
supra, specifically provides that the moneys allocated to each
county from the lateral road account shall be used by said
county first for paying the principal, interest and sinking
fund requirements maturing during the fiscal year for which
such money was allocated to such county on bonds, warrants,
and other legal obligations issued prior to January 2, 1939.
As stated in the statute, it was the intention of the Legisla-
ture to designate and set apart sufficient money to pay off and
discharge said outstanding obligations incurred for right-of-
way acquisition. It is further provided that funds remaining
in the lateral road fund of any county after the payment of
said right-of-way obligation may be used by the county, under
the direction of the commissioners' court for any one or all
of the purposes as set out in the statute. Two of the purposes
for which the remaining fund may be expended as provided in the
statute is for the acquisition of rights-of-way for county

lateral roads and for the payment of legal obligations incurred therefor prior to January 2, 1939, and for the construction or improvement of county lateral roads.

When the commissioners' court of a county elects to use the money allocated to it from the lateral road account for the construction or improvement of county lateral roads, it is our opinion that the court may exercise all implied powers that is necessarily incidental to their declared power of constructing or improving of county lateral roads. Therefore, you are respectfully advised that it is the opinion of this department that the commissioners' court may use the funds remaining in the lateral road fund of a county to purchase road machinery for the maintenance of lateral roads when such machinery is necessary for the maintenance, construction or improvement of the county lateral roads.

In this connection we call your attention to our Opinion No. O-2320 which held that:

"The county is without authority to use the funds specifically credited to the various defined road districts by the terms of this Act for any purpose except that which would confer a direct benefit upon the taxpayers living within those particular defined districts, and in harmony with such construction we advise that the county cannot expend road district moneys pursuant to the option provided in Section 'E', paragraph 5, subsection (h), Section 6 of House Bill 688."

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Ardell Williams
Ardell Williams, Assistant

APPROVED SEP 30, 1940
/s/ Gerald C. Mann
AGGORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:      BWB, CHAIRMAN

AW:eaw:wb